HAROLD O. HAMMER, APPELLANT, V. ESTATE OF CAROLINE HAMMER, APPELLEE.

51 N. W. 2d 609

Filed February 8, 1952. No. 33081.

*Oscar T. Doerr* and *Paul J. Garrotto,* for appellant.

*Webb & Kelley* and *Joseph H. McGroarty,* for appellee.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

Plaintiff initiated this action by filing a claim against the estate of Caroline Hammer, deceased, based on an alleged oral contract with deceased. The matter was heard in the county court and the claim disallowed. Plaintiff appealed to the district court where issues were made and trial was had. At the close of plaintiff's case-in-chief, defendant moved for a directed verdict or a dismissal. The trial court sustained the motion and dismissed the action. Plaintiff appeals presenting questions as to the refusal of the trial court to admit offered evidence and contending that the evidence was sufficient to entitle him to have the cause submitted to the jury. We affirm the judgment of the trial court.

There was involved in the pleadings in the county and district courts an added claim that plaintiff should recover $5,000 for services rendered the deceased in her lifetime. There is no contention here that plaintiff pro-

duced sufficient evidence to sustain that claim, hence no further mention will be made of it.

The deceased and her husband lived in Omaha, Nebraska. Plaintiff refers to them as his aunt and uncle. The evidence suggests that the blood relationship was with the uncle.

Plaintiff was born in Sweden in September 1913, his last name then being Pehrsson. Plaintiff came to America in 1926, and made his home with deceased and her husband. The husband died in 1940 and deceased died in 1947. Plaintiff went to school where he was registered under the name of Hammer. His citizenship and Army papers were issued under that name. He was graduated from high school in June 1931. In September 1931, he became steadily employed and continued in that employment until late in 1942, when he entered the United States Army. He was in the service 3 years and 2 months. Upon discharge from the Army he resumed his old employment for a few months. He lived in the home of deceased with her son and grandson, the deceased being then in a hospital. Sometime in 1946, plaintiff removed to the State of California where he has since lived and been employed.

There is some variance in the details of the claim as filed in the county court and as stated in the petition in the district court. In the district court plaintiff alleged that on or about October 1, 1931, decedent stated to plaintiff that "* * * if he would pay to her some money out of his earnings, she would save the money for him and that she would pay him interest on all such payments and that she would repay said money to him and double the amount whenever he married or required the money or upon her death"; that thereafter during the period up to and including November 16, 1942, he paid deceased the total sum of $6,550; that deceased did not perform her part of said agreement; that by her will she directed the disposition of all property in her possession to others; and that by reason

thereof plaintiff had "* * * been deprived of the consideration expressed in said contract and that claimant is entitled to recover from said estate the sum of $13,100.00 and interest at six per cent from the date of the various deposits made by him at double the amount of said deposits." Plaintiff prayed for judgment in the sum of $18,100 with interest at 6 percent "or double the amounts paid by claimant to decedent for safekeeping and investment," together with costs.

Defendant's answer is in effect a general denial and a denial of any indebtedness to the plaintiff. The cause was tried on these issues.

In his summary here of his claim in county court, plaintiff states that he and decedent "* * * had entered into a verbal agreement by virtue of which he was to give her a certain amount of his earnings which she would save for him, which amount she would double and invest and pay it to him at such time as he might marry or after her death."

In his statement of the case here, plaintiff states that the claim is "* * * for the sum of $13,100.00 with interest at 6% from the date of various deposits made with the decedent, pursuant to an agreement with the decedent that if he would deliver to her funds from time to time, she would save the money for him, and return it to him doubled when he would marry, or would require the money * * *."

There is no contention here but that plaintiff's right to testify was limited by the provisions of section 25-1202, R. R. S. 1943.

Plaintiff undertook to establish the claim by the testimony of third parties and by one exhibit, which the trial court refused to admit in evidence.

Plaintiff offered the evidence of five witnesses who testified as to conversations had with deceased at different times beginning in 1931 to a period after plaintiff went into the Army in 1942. The sum of this evidence is that deceased said plaintiff was saving money; that

he was paying money to her; that she was saving it for him so that he would have it when he got married or some other change occurred; that it was in the bank; and that she was adding a little to it. The testimony of one witness which is more specific is set out later herein.

This brings us down to exhibit 1 which plaintiff first offered in its entirety and then offered it for reasons hereafter shown, limited to entries down to and including October 1940. The trial court refused to admit it in evidence.

Exhibit 1 is a small book about 3 x 5 inches in size containing some 60 sheets of ruled paper. Written on the first page are plaintiff's name and address. On the second are names and addresses in Sweden. At the top of the third page is written "Harold Hammer paid to Mrs. Caroline Hammer," below that "1931," and below that, one entry "$125.00," then below that "x1932x" followed by entries on single lines "Jan 2 $20," "Jan 16 $20," and like entries on the 2nd and 16th of each month, totaled to "$480." On another page is "x1933x" followed by like entries for the 2nd and 16th of each month, excepting that the entries for the 2nd of each month are "$20" and those for the 16th are "$30." These entries are totaled to "$600" followed in a column by "$600," "480," "125," totaled to "$1205." Similar entries are made for the years, months, and days from 1934 to and including November 16, 1942, with one exception. The February 2, 1934, entry is "$30.00" and that of the 16th, "$20.00." Following each December 16 entry (in 1942, November 16) is a carrying forward of a balance and a final total of "$6505."

Plaintiff offered this initially as a book of account showing sums paid to deceased and also as a record of a transaction between plaintiff and deceased made in the regular course of business.

Later the fifth witness was asked about this exhibit. He testified that he first saw the exhibit "on the front room table" in deceased's home. He then started to

testify as to what deceased "told me late" in 1940 and apparently as to that date said "she had showed it to me at that one time" and "she told me there late in 1940 that he was saving money—about fifty a month—and that she was also putting fifty a month in there." Later he testified that he first saw the exhibit "the last part of 1939." Deceased then handed it to the witness and told him that plaintiff "was saving fifty a month and that she would put in that much with it, and that he was putting so much—well, each half; of course, each pay day it amounted to fifty a month," and that deceased "showed me the book and it showed the amounts in there of fifty a month." He further testified that when deceased handed him the exhibit she told him "it was a book the amounts was being kept in that (plaintiff) was saving money." He also testified that late in "'40, she told me that he had over five thousand saved then," and that later deceased told him plaintiff was "still saving his money and he was still giving her $50.00 a month yet," the last conversation being in April or May 1942.

Based on this testimony, plaintiff made the offer of that part of the exhibit up to and including October 16, 1940.

Plaintiff then testified that the entries in the exhibit were in his handwriting and made every month at or about the time of the dates contained in the exhibit; that the first entry was made in 1931, and the last in 1942; and that it was a book in which "I kept the records—."

Plaintiff then renewed the offer of the exhibit and it was not received.

We do not deem it necessary to determine the question of the admissibility of exhibit 1. Assuming, but not deciding, that the exhibit was admissible, as well as evidence admitted but later stricken, and assuming, but not deciding, the sufficiency of the evidence to show that plaintiff paid the deceased the money which

he contends was paid to her, the plaintiff has failed to prove the oral contract alleged and upon which he based his claim.

The evidence of payments claimed to have been made is at no point shown related to the contract alleged. There is no evidence that goes to show the existence of the agreement alleged to the effect that deceased agreed to double the amount which plaintiff paid to her, to pay it to him, and to pay interest thereon. Plaintiff has failed to prove essential allegations as to the contract which he alleged.

As we held in Fairchild v. Fairchild Clay Products Co., 141 Neb. 356, 3 N. W. 2d 581, "Under the issues plaintiff was required in the first instance to prove his contract * * *," and restated the rule that "When a party pleads a fact which is material to the issue being tried, he thereby assumes the burden of proving the existence of such fact." See, also, Riley v. Riley, 150 Neb. 176, 33 N. W. 2d 525; Masonic Temple Craft v. Stamm, 152 Neb. 604, 42 N. W. 2d 178.

Plaintiff having failed to prove essential allegations of his cause of action, the applicable rule is: "Where the evidence is insufficient to sustain a verdict in favor of plaintiff, the trial court may give a peremptory instruction in favor of defendant or excuse the jury and enter a nonsuit." Campbell v. Columbia Casualty Co., 125 Neb. 1, 248 N. W. 690. See, also, Rzeszotarski v. American Smelting & Refining Co., 133 Neb. 825, 277 N. W. 334.

It necessarily follows that the judgment of the district court was not erroneous. It is affirmed.

AFFIRMED.